UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

DAVID MANNO, )
 )
      Plaintiff, )
 )
v. ) Case No. 1:23CV37
 )
RANDY SCOTT,[1] )
 )
      Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This is a *pro se* civil rights action filed under 42 U.S.C. § 1983 by Plaintiff David Manno, an inmate in the custody of the North Carolina Department of Adult Correction. Plaintiff alleges that Defendant prevented Plaintiff from attending his physical therapy appointments on July 28, 2022, and six dates in August 2022. (3d. Am. Compl. ("Compl.") [Doc. #19] at 5.)[2] Currently pending before the Court is Defendant's Motion for Summary Judgment [Doc. #31]. For the reasons set out below, the Court recommends that Defendant's Motion for Summary Judgment be granted.

---

[1] The operative Complaint identifies Defendant as "Keith Scott," a correctional officer at Scotland Correctional Institution. (Compl. [Doc. #19] at 2.) Defendant's Answer indicates that no one by the name of Keith Scott has worked at Scotland Correctional Institution but an officer named Randy Scott does. (Answer [Doc. #27] at 3-4.) Records produced by Defendant reflect that Scotland Correctional Officer Randy Scott interacted with Plaintiff on July 28, 2022. (Scott Decl. Ex. B, Grievance Files [Doc. #32-3] at 3-4.) Plaintiff later clarified that he relied on another inmate for Defendant's full name and that he "would request that the name Keith Scott be amended to Randy Scott" for this litigation. (Notice [Doc. #29] at 1.) Randy Scott answered, participated in discovery, and has moved for summary judgment. Therefore, the Court will amend the Defendant's first name to Randy Scott rather than Keith Scott, as requested by Plaintiff.

[2] All citations to documents filed in the present litigation refer to the page numbers added by the Court's electronic case filing ("ECF") system.

I.    Facts, Claims, and Procedural History

Plaintiff's Complaint alleges Defendant denied him access to his physical therapy appointments on July 28, 2022 and "6 other dates . . . all in August." (Compl. at 5.) Plaintiff alleges that he has a physical condition involving torn cartilage and fluid in his knee and that a doctor ordered that he have physical therapy sessions. (Compl. at 5, 7.) He alleges that on July 28, 2022, he and three other inmates were transported from Lumberton Correctional Institution ("Lumberton") to Scotland Correctional Institution ("Scotland") for physical therapy.[3] (Compl. at 4.) Plaintiff alleges that Defendant sent him through security screening, that the screening alerted, and that Defendant did not let him attend his appointment. (Compl. at 5.) Plaintiff further alleges that, after Plaintiff told Defendant that the security screening equipment was probably dysfunctional, Defendant used profanity at Plaintiff and placed Plaintiff in a holding cell. (Compl. at 5.) According to the Complaint, the six other alleged denials of treatment were "for the same reason." (Compl. at 4.) Plaintiff alleges that his knee "continue[d] to swell and cause severe pain to walk." (Compl. at 5.)

Plaintiff first filed a Complaint alleging that Defendant caused him to miss a single session of physical therapy. Due to significant pleading defects, the Court stayed the case and allowed Plaintiff to amend the Complaint twice. (Orders to File and Stay [Doc. #11, #13].) Plaintiff's Amended Complaint again alleged only that Plaintiff missed a single therapy session, as did his Second Amended Complaint. After the first three Complaints all failed to allege more than one missed physical therapy session and failed to set out facts supporting that

---

[3] Although Plaintiff is now housed at Scotland Correctional Institution, at the time of the underlying events, Plaintiff was housed at Lumberton Correctional Institution and had to be transported to and from Scotland for his physical therapy appointments. (Compl. at 7; Notice of Change of Address [Doc. #44] at 1.)

2

Defendant acted with deliberate indifference to Plaintiff's medical needs or caused any injury to Plaintiff, the Court recommended dismissal of the Second Amended Complaint. (Recommendation [Doc. #15].) Plaintiff filed an Objection [Doc. #17] in which he asserted for the first time that he was denied physical therapy on additional days but had not included them because he had not yet completed the grievance process for those additional days. Plaintiff further alleged that he needed copies of his medical records. The Court therefore withdrew its Recommendation and allowed Plaintiff another opportunity to amend the Complaint. (Order [Doc. #18].)

Plaintiff's Third Amended Complaint, the operative pleading in this action, alleges that Defendant denied Plaintiff access to his physical therapy appointments on seven occasions. (Compl. [Doc. #19] at 4.) The Court ordered service on Defendant. (Order [Doc. #20].) Defendant filed an Answer, and the Court scheduled the case for discovery, which has since concluded. (Answer [Doc. #27]; Scheduling Order [Doc. #28].) Defendant then moved for summary judgment. (Mot. [Doc. #31].) In support of his Motion, Defendant filed declarations from Defendant and from Plaintiff's physical therapist, along with exhibits including medical records and files related to Plaintiff's grievance submission. (Def.'s Br. [Doc. #32].) The Court directed counsel for Defendant to provide Plaintiff with a complete copy of his medical records from Lumberton from June 1, 2022 to November 30, 2022. (Order [Doc. #42].) Plaintiff's responsive filing includes excerpted medical records and two unsworn affidavits, one from Plaintiff and one from inmate Dennis Rankins. (Pl.'s Br. [Doc. #43].)

A.  Defendant's Evidence

Defendant produced medical records reflecting that Plaintiff injured his knee in 2020 after jumping from the top bunk of a bunk bed. (Manning Decl. Ex. A, Clinic Records [Doc. #33] at 1.) In June 2022, after complaining of knee pain, Plaintiff received a diagnosis of "[t]endinosis and partial tearing of the distal semimembranosus" and was recommended for physical therapy two or three times a week for eight weeks, for a total of 16 to 24 sessions. (Clinic Records at 1, 4, 6.) Plaintiff was scheduled for twenty-four physical therapy appointments, beginning on July 14, 2022. (Manning Decl. Ex. B, Appointment Schedule [Doc. #34] at 1-2.) The medical records reflect that Plaintiff had physical therapy as scheduled on July 14, 18, 21, and 27, 2022, with physical therapist Melissa Manning. (Manning Decl. Ex. C, Physical Therapy Records [Doc. #35] at 1-4.)

On July 28, 2022, Plaintiff and three other inmates arrived at Scotland for medical appointments. (Scott Decl. [Doc. #32-1] at 2.) When they arrived, Defendant was working "in medical" where inmates are brought for physical therapy. (Scott Decl. Ex. B, Grievance Files [Doc. #32-3] at 3.) Defendant's duties as a correctional officer at Scotland include "search[ing] offenders, visitors, cells, and other areas for weapons and contraband." (Scott Decl. at 1.) Defendant notes that as with all prisoners entering the facility, all four inmates would have been required to "successfully pass through a cell sensor (metal detector) in a receiving area before being allowed to access other parts of the facility." (Scott Decl. at 2.) Defendant's Declaration states that the security screening was a "security measure designed to keep the facility and its staff safe" and that all inmates are required to pass through the screening. (Scott Decl. at 2.) The sensor did not alert for the three other inmates but alerted

4

when Plaintiff passed through the sensor. (Scott Decl. at 2.) Defendant informed Plaintiff that he could not enter the facility without passing through the cell sensor and not setting it off. (Scott Decl. at 2; Grievance Files at 3 (stating Defendant "explain[ed] that if you don't pass cell sensor, you don't go to medical for P.T.").) According to Defendant, Plaintiff became verbally aggressive and cursed at Defendant, and Defendant placed Plaintiff "in a holding cell to cool off or until he could be transported back" to Lumberton. (Scott Decl. at 2.) Defendant states that he was concerned about his own safety and the safety of others, due to Plaintiff's behavior and the risk that Plaintiff "harbored unauthorized metal on his body." (Scott Decl. at 2.) Defendant also states that he was not aware of Plaintiff's specific medical issues, diagnoses, or treatments. (Scott Decl. at 2.) PT Manning's records reflect that on July 28, 2022, Plaintiff was not at his appointment because he "was unable to pass through the metal detector." (Physical Therapy Records at 5.) Upon his return to Lumberton, Plaintiff had a clinical encounter with a nurse who noted Plaintiff as having "No Complaint(s)." (Clinic Records at 17.)

PT Manning's records reflect that Plaintiff received treatment as scheduled on August 1, 3, and 4, 2022. (Physical Therapy Records at 6-8.)[4] PT Manning recorded that Plaintiff again received treatment as scheduled on August 10, 11, 15, 17, 18, and 24, 2022. (Physical Therapy Records at 9-14.) Plaintiff's appointments that were originally scheduled for

---

[4] Due to a gap in the records, it is unclear whether a session took place on August 8, 2022, or was rescheduled or cancelled. (Compare Appointment Schedule with Physical Therapy Records.) Defendant contends that "Plaintiff's physical therapist neglected to record" the August 8, 2022 appointment. (Def.'s Br. at 17.) PT Manning recorded the August 4, 2022 appointment as the eighth out of twenty-four and the August 10, 2022 appointment the tenth out of twenty-four, suggesting a ninth appointment between the two. (Physical Therapy Records at 8-9.) Nevertheless, given the uncertainty and the absence of a record, the Court will not infer that an appointment took place on August 8, 2022.

September 8 and 12, 2022, appear to have been rescheduled or cancelled, but the September 14, 2022 treatment notes explain that Plaintiff "says he got a cortisone shot on 9/8/22 and it hurt his knee worse so he couldn't come." (Compare Appointment Schedule with Physical Therapy Records at 15.) The records also reflect that Plaintiff received treatment as scheduled on September 14, 15, 19, and 21, 2022. (Physical Therapy Records at 15-18.)

PT Manning's treatment notes state that on September 22, 2022, Plaintiff was "not seen due to being stuck outside at count." (Physical Therapy Records at 19.)[5] A nurse at Lumberton recorded an encounter with Plaintiff that same day and noted, "Offender refuses to go to Scotland CI for physical therapy," due to a rash related to his handcuffs. (Clinic Records at 50.) Plaintiff received treatment for the rash and was instructed to apply medication "before going on any outside trips that require handcuffs." (Clinic Records at 51.) PT Manning recorded that Plaintiff received physical therapy again on September 26 and 28, 2022. (Physical Therapy Records at 20-21.)

PT Manning's notes reflect that on October 3, 2022, Plaintiff "was not seen because, according to a transport officer, [he] refused to attend the appointment." (Manning Decl. [Doc. #32-4] at 3; Physical Therapy Records at 22.) Notes from a clinical encounter at Lumberton on October 7, 2022, reflect that Plaintiff again complained of a rash and that his records were "updated for flex-cuffs due to allergic reaction from handcuffs." (Clinic Records at 58-59.)

---

[5] Plaintiff contests PT Manning's September 22, 2022 notes on the basis that he did not travel to Scotland on that day, but his account is consistent with PT Manning's notes, which also reflect that Plaintiff was not seen and that his appointment was rescheduled. (Compare Pl.'s Br. at 1-2 with Physical Therapy Records at 19.)

PT Manning's records reflect that on November 10, 2022, Plaintiff had his last physical therapy session, and stated "that his pain never changes" and "that he has gained some strength from PT but his knee still hurts the same." (Physical Therapy Records at 23.) In total, Plaintiff's medical records reflect that he received physical therapy on at least twenty occasions: July 14, 18, 21, and 27; August 1, 3, 4, 10, 11, 15, 17, 18, and 24; September 14, 15, 19, 21, 26, and 28; and November 10, 2022. (Physical Therapy Records.)

B. Plaintiff's Evidence

Plaintiff filed a sworn "Answer to Summary Judgment" stating that his filing "including the document enclosed with it" was submitted under penalty of perjury. (Pl.'s Br. at 2.) Attached were two signed but unsworn documents styled as affidavits—one from Dennis Rankins and one from Plaintiff—and two excerpts from Plaintiff's physical therapy records. "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) (collecting cases). "[A]n unsworn statement is admissible to support a summary judgment motion only if it is made under penalty of perjury." LeMay v. United States, No. 1:02CR105-6, 2010 WL 3522333, at *1 (W.D.N.C. Sept. 7, 2010); see also United States ex rel. Doe v. Heart Sol., PC, 923 F.3d 308, 315 (3d Cir. 2019) (discussing 28 U.S.C. § 1746). In this case, while Plaintiff submitted his responsive filing "including" his own enclosed affidavit under penalty of perjury, Mr. Rankins's statement is not under penalty of perjury, and Plaintiff's attestation cannot

extend beyond Plaintiff's own statements. Accordingly, Mr. Rankins's statement is not properly before the Court.[6]

In his statement, Plaintiff does not rebut or contest the evidence that he could not pass through the cell sensor on July 28, 2022. In fact, Plaintiff concedes that the cell sensor alerted three different times when Plaintiff walked through the sensor. (Manno Aff. [Doc. #43] at 5.) Plaintiff states that Defendant also screened Plaintiff using a wand-style metal detector and that Plaintiff "passed" the wand screening. (Manno Aff. at 5.) Plaintiff states that after he cleared the wand screening, he and the other prisoners began proceeding to the medical facility when Plaintiff told Defendant that either Defendant was too close to the cell sensor or the cell sensor was "screwed up." (Manno Aff. at 5; see Grievance Files at 1-2.) Plaintiff states that Defendant began using profanity and instructed Transportation Officer Lowery to place Plaintiff in the holding cell. (Manno Aff. at 5.) Plaintiff was then unable to have his appointment that day. (Manno Aff. at 5.)

Although not included in the Complaint, Plaintiff's affidavit includes additional contentions regarding a second incident on August 10, 2022, when he was receiving a physical therapy treatment involving electric stimulation. (Manno Aff. at 5.) Plaintiff contends that the intensity level became painful and that he "said ow" and asked PT Manning "if I could turn down the box to get up and lets go." (Manno Aff. at 5.) According to Plaintiff's affidavit,

---

[6] Even if considered, Mr. Rankins's affidavit would not add anything. Mr. Rankins states only that he was one of the four inmates transported to Scotland on July 28, 2022, and that Plaintiff was denied physical therapy on July 28 because an "officer was standing to[o] close to the sensor so it kept going off" even though Plaintiff "cleared the wand." (Rankins Aff. [Doc. #43] at 3.) Mr. Rankins also confirms Plaintiff's accounts of a separate PT appointment on August 10, 2022, and an interaction that occurred later. (Rankins Aff. at 3-4.) Plaintiff's statements regarding those interactions are set out above, and Mr. Rankins's statement would not add anything or change the analysis.

8

Defendant then removed Plaintiff from the room and placed Plaintiff in the medical holding cell until it was time for his transportation back to Lumberton. (Manno Aff. at 5.)

Finally, Plaintiff also describes a third incident, the exact date unknown, that Plaintiff contends occurred during the process when correctional officers remove handcuffs and other restraints from prisoners headed to medical appointments. (Manno Aff. at 5-6.) Plaintiff states that Defendant pushed Plaintiff against the wall and started to search him while holding his arm behind his back. (Manno Aff. at 6.) Plaintiff states that Defendant said, "I know what you did," using profanity, and left Plaintiff in the medical holding cell until it was time for his transportation back to Lumberton. (Manno Aff. at 6.) Plaintiff does not include any other statements or assertions regarding any other incidents, and does not address the "6 other dates . . . all in August" alleged in the Complaint.

II. <u>Legal Standard</u>

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in the light most favorable to the non-moving party. <u>Id.</u> The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." <u>Temkin v. Frederick Cnty. Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward

with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A "mere scintilla of evidence" supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (noting that a non-moving party may not rest upon mere allegations or denials).

III. Discussion

Under the Eighth Amendment, prison officials must provide "humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). A plaintiff must satisfy a two-prong test to sustain an Eighth Amendment claim based on inadequate medical care. Farmer, 511 U.S. 825; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted) ("[A] prisoner must prove . . . that 'the deprivation . . . was *objectively* sufficiently serious,' and that '*subjectively* the officials act[ed] with a sufficiently culpable state of mind.'").

The first prong is objective and requires a showing of a "sufficiently serious" deprivation of care for a serious medical need. Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)); Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted).

10

Second, Plaintiff must also show that, subjectively, Defendant acted with "deliberate indifference" to his serious medical needs. Farmer, 511 U.S. at 834. Deliberate indifference is more than mere negligence and requires that a prison official "knows of and disregards an excessive risk to inmate health or safety." Id. at 835-837. Deliberate indifference may manifest when non-medical prison personnel, such as prison guards, "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed." Estelle, 429 U.S. at 104-05. "[A]n inadvertent failure to provide adequate medical care" is not enough. Id. at 105. Once prison officials are aware of a serious medical need, they only need to "respond[] reasonably to the risk." Farmer, 511 U.S. 825 at 844.

In this case, as to the objective prong of the test, the evidence reflects that Plaintiff had a knee injury and that he had been referred to physical therapy. However, Plaintiff has not presented evidence that could support a finding of a serious deprivation of medical care. Plaintiff's evidence reflects that, at most, Defendant prevented Plaintiff from attending two sessions, once on July 28, 2022, and once on an unknown date, and that Defendant also removed Plaintiff from his appointment on August 10, 2022, after Plaintiff attempted to stop a treatment that Plaintiff found painful. (Manno Aff. at 5-6.) Plaintiff ultimately attended at least twenty physical therapy sessions, including nine sessions in August. The treatment Plaintiff received therefore is largely consistent with the recommended treatment of sixteen to twenty-four sessions of physical therapy. Plaintiff's medical records also reflect that Plaintiff received physical therapy on nine of the ten dates in August 2022 shown on his original physical therapy schedule, even if the August 10, 2022 appointment was interrupted, and

11

Plaintiff has not presented any support for his contention in the Third Amended Complaint that Defendant denied him access to physical therapy six different times in August.

While Plaintiff's medical records reflect some changes between the original physical therapy schedule and the treatment he received, Plaintiff has not presented evidence that any other missed appointments are attributable to Defendant. (See, e.g., Physical Therapy Records at 15 (explaining that Plaintiff missed appointments after his September 8, 2022 cortisone injection).) In addition, the medical records note that Plaintiff "refuse[d] to go to Scotland" and "refused to attend" appointments on September 22 and October 3, 2022, and Defendant, an officer at Scotland, was not responsible for Plaintiff missing treatment on days where Plaintiff refused to travel to Scotland. (Clinic Records at 50; Physical Therapy Records at 22.)

Plaintiff's medical records also reflect that he stated his pain level "never changes" and that physical therapy did not impact his pain level. (Physical Therapy Records at 23.) Plaintiff received other treatments for pain management, including a lidocaine injection in his knee. (Clinic Records at 73.) Ultimately, in light of the treatment Plaintiff received, there is no indication that Plaintiff suffered a substantial risk of serious harm as a result of missing two physical therapy sessions and leaving one early after he himself indicated the treatment was causing him pain.

As to the subjective prong of the test, Defendant knew that Plaintiff was brought to Scotland for physical therapy appointments, although there is no evidence that Defendant knew of Plaintiff's specific medical needs. While Defendant knew Plaintiff had physical therapy appointments, there is no indication that Defendant believed missing the appointments would create an excessive risk to Plaintiff's health. For July 28, 2022, the

12

Case 1:23-cv-00037-LAF-JEP    Document 45    Filed 02/23/26    Page 12 of 15

evidence reflects that Plaintiff was the only inmate in his group that set off the cell censor, which Defendant understood "could mean that [Plaintiff] harbored unauthorized metal on his body." (Scott Decl. at 2.) Defendant presented evidence that he had concern for his own safety and the safety of others due to Plaintiff's positive alert on the cell sensor and Plaintiff's conduct afterwards. (Scott Decl. at 2.) Although both Parties dispute whether they behaved aggressively and used profanity, the undisputed material facts reflect that Plaintiff set off the cell sensor and was unable to walk through it without setting it off. In addition, while Plaintiff asserts that he did not set off the wand metal detector, Plaintiff conceded that he set off the cell sensor at least three times and told Defendant that either the cell sensor was defective or the positive alerts were because of Defendant. Plaintiff has not created a factual dispute as to Defendant's evidence that, as an officer tasked with maintaining safety at Scotland, Defendant acted reasonably in light of his belief that Plaintiff presented a safety risk due to the potential presence of unauthorized metal on Plaintiff's person. See Shakka, 71 F.3d 162, 167 (finding no Eighth Amendment violation when an inmate was temporarily deprived of a wheelchair for the safety of himself and others).

As to the other incidents alleged by Plaintiff,[7] Plaintiff has not established that Defendant acted with deliberate indifference to his health or safety in removing Plaintiff during Plaintiff's August 10, 2022 appointment. Rather, Plaintiff describes an incident in

---

[7] Defendant also contends that Plaintiff's claims regarding missed appointments other than the July 28, 2022 appointment are barred by the Prison Litigation Reform Act ("PLRA") because Plaintiff failed to fully exhaust his administrative remedies except for as to the July 28, 2022 incident. (Def.'s Br. at 9, 11.) Plaintiff raises contentions regarding the availability of the grievance process. (Objection to Recommended Ruling [Doc. #17] at 2.) However, the Court need not address those issues, as Plaintiff has failed to establish a constitutional violation in any event.

which he was experiencing significant pain during treatment, "said ow," and asked to "turn down the box to get up and lets go," after which Defendant took Plaintiff to the holding cell. (Manno Aff. at 5.) Plaintiff has not presented evidence that Defendant acted with deliberate indifference as to Plaintiff's medical needs by removing Plaintiff, as Plaintiff's own evidence reflects that Plaintiff requested to stop the treatment. In addition, as to the third incident described by Plaintiff, when Defendant searched Plaintiff and left Plaintiff in the holding cell, it is unclear when this incident took place, whether Defendant would have been aware of a serious medical need of Plaintiff's at the time, and whether Plaintiff cleared the search. Absent more evidence, these incidents do not amount to a showing that Defendant acted with deliberate indifference as to a serious medical need of Plaintiff.[8]

In sum, the Court concludes that no reasonable juror could find that Defendant acted with deliberate indifference to Plaintiff's serious medical need. In addition, Plaintiff has not established that Defendant interfered with Plaintiff's treatment in a way that caused Plaintiff substantial harm, in light of the twenty treatment sessions Plaintiff did receive and the evidence that Plaintiff missed at least four appointments for reasons unrelated to Defendant. See Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008) ("An Eighth Amendment violation only occurs . . . if the delay [in medical care] results in some substantial harm to the patient.").

---

[8] To the extent Plaintiff may be attempting to raise a new claim of excessive force, "[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008) (quoting Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004)).

14

Accordingly, the Court recommends that Defendant's Motion for Summary Judgment be granted.[9]

IV. Conclusion

For the reasons stated above,

IT IS THEREFORE RECOMMENDED that Defendant's Motion for Summary Judgment [Doc. #31] be GRANTED and that the Court enter summary judgment in favor of Defendant.

This, the 23rd day of February, 2026.

Joi Elizabeth Peake
United States Magistrate Judge

---

[9] Because the Court concludes that Plaintiff did not establish a constitutional violation, the Court need not reach the issue of qualified immunity. However, the Court also notes that Defendant in his individual capacity would be entitled to qualified immunity in this circumstance. Qualified immunity shields government officials from liability unless "the official violated a statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A right is clearly established when "'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft, 563 U.S. at 741 (quotations omitted). Thus, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Id. at 743. In this case, Plaintiff has not established a constitutional violation under the Eighth Amendment, nor has he established that every reasonable official would have understood that the actions violated a constitutional right. Thus, Defendant would also be entitled to qualified immunity, and Plaintiff would not be able to recover damages from Defendant in Defendant's individual capacity.

The Court also notes that the official-capacity claims for damages would be barred by sovereign immunity. [The Supreme Court has held that "neither a State *nor its officials acting in their official capacities* are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (emphasis added). Indeed, an official capacity claim raised under § 1983 seeking damages against a state official is generally a claim against the state itself. Hafer v. Melo, 502 U.S. 21, 25 (1991). "The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity," and § 1983 does not change or override that immunity. Will, 491 U.S. at 66 (internal citation omitted). Thus, Plaintiff also would not be able to recover damages for claims against Defendant in his official capacity.